IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| STACY BAILEY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 3:18-CV-01161-L |
| | § | |
| MANSFIELD INDEPENDENT | § | |
| SCHOOL DISTRICT, | § | |
| DR. JIM VASZAUSKAS, AND | § | |
| DR. KIMBERLY CANTU, | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

TO THE HONORABLE SAM A. LINDSAY,
UNITED STATES DISTRICT JUDGE:

COMES NOW, the Plaintiff, Stacy Bailey, and files her First Amended Complaint complaining of Defendants, Mansfield Independent School District, Dr. Jim Vaszauskas, and Dr. Kimberly Cantu, and for cause of action would respectfully show the Court as follows:

### INTRODUCTION

Each morning, Stacey Bailey walks into her classroom and switches on the lights: Like her fellow teachers, she enters school with a love of learning and extra supplies. She comes with similar credentials and high performance reviews. Just like many colleagues, she shares stories and pictures of her family and loved ones in the classroom. Ms. Bailey also enters the school as a woman, as gay, and who is married to another woman. For that alone, the Mansfield Independent School District subjected her to a barrage of adverse employment actions and professional harms.

Although the school district now responds with a smattering of procedural arguments and technical excuses, they cannot deny a central fact: if Ms. Bailey were married to a man or had not mentioned her familial status, none of this would have happened.

That is unfortunately an all-too-familiar position: Essentially, under the school district's view, school administrators essentially "don't ask" about sexual orientation and employees "don't tell." But "Don't Ask, Don't Tell" is no longer the law of the land, for good reason. As Supreme Court of the United States has repeatedly made clear, the Constitution enshrines the equal dignity of lesbian and gay individuals and broadly protects the freedom to marry.

At bottom, this case does not require some massive shift in the law. This court need not break new ground doctrinally. It need not delve into the lesson plans of particular grade levels. (Indeed Mansfield's recurrent insinuation that it was somehow "inappropriate" for Ms. Bailey to reference marital status skirts troublingly close to the longstanding and groundless stereotypes about the sexual predilections of gay/lesbian persons – and is borderline defamatory.)

Rather, the unique circumstances here boil down to this: as a public employee, can Ms. Bailey be constitutionally punished for exercising the freedom to marry or merely mentioning it? No. Surely, the school district could not legally punish a white teacher for referencing his or her marriage with an African-American spouse (or vice versa). This Court can and should straightforwardly apply and the words and wisdom of enduring precedents – including *Loving v. Virginia* and *Oberfegell v. Hodges* – and uphold Ms. Bailey's basic protections provided by the Constitution.

Accordingly, Stacy Bailey seeks the protection of this Court.

I.

JURISDICTION

1. It appears that the Court has jurisdiction under 28 U.S.C. § 1331 because there is a federal question, and 42 U.S.C. § 1988(a).

II.

VENUE

2. Venue is proper in the Northern District of Texas because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred there.

III.

PARTIES

3. Plaintiff Stacy Bailey is an individual who is a citizen of the State of Texas and lives in Dallas, Texas with her wife.

4. Defendant Mansfield Independent School District ("Mansfield ISD") is a school district organized under the laws of the State of Texas and may be served by serving its Superintendent, Dr. Jim Vaszauskas, and may be served at his place of employment, Mansfield ISD, 605 E. Broad Street, Mansfield, Texas 76063.

5. Defendant Dr. Jim Vaszauskas, ("Defendant Vaszauskas") Superintendent of Mansfield Independent School District and may be served at his place of employment, Mansfield ISD, 605 E. Broad Street, Mansfield, Texas 76063. Defendant Vaszauskas is being sued in his individual and official capacity.

6. Defendant Dr. Kimberly Cantu, Associate Superintendent, Human Resources, ("Defendant Cantu") is an individual who may be served at her place of employment, Mansfield ISD, 605 E. Broad Street, Mansfield, Texas 76063. Defendant Cantu is being sued in her individual capacity.

## IV.
## FACTS

7.     Plaintiff is a teacher with Mansfield ISD who taught for ten years at Charlotte Anderson Elementary.

8.     Defendant Mansfield ISD repeatedly gave Plaintiff exemplary performance evaluations.

9.     For two of the ten years she has taught at Charlotte Anderson Elementary, Plaintiff was selected as Teacher of the Year.

10.    Plaintiff has a dedication to and love for her students.

11.    Plaintiff has taught art at Charlotte Anderson Elementary School.  Plaintiff was employed under a contract with Defendant Mansfield ISD that was governed by its written terms and the provisions of Chapter 21 of the Texas Education Code.

12.    Defendant Vaszauskas is the Superintendent of Mansfield ISD. As such, Defendant Vaszauskus is a final policy maker of Defendant Mansfield I.S.D.

13.    Defendant Dr. Kimberly Cantu is the Associate Superintendent, Human Resources of Mansfield ISD.

14.    Fellow teachers, administrators, and/or other employees of Mansfield ISD who are heterosexual regularly mention their respective spouse while in school, have photos of their family, fiancés and spouses in the work place, or reference their family, fiancés and spouse as part of conversations with students, lessons, or other classroom-related interactions.

15.    Plaintiff is lesbian/gay and was born that way.

16.    For the last six years, Plaintiff was open about who she was at work, especially among colleagues, but of course never used sexual or mature terms with students.

17.    On or about August 23, 2017, while providing an introduction to a class in the form of a "First Day of School" PowerPoint, Plaintiff shared various photos of her parents, her family, her

"future wife," her best friends, and pictures of Plaintiff when she was a child in an effort to engage the students. This technique is widely used by other teachers. The photo of Plaintiff's future wife was an endearing photo of Plaintiff and her future wife dressed as characters from the children's movie "Finding Nemo."  Plaintiff then showed the students slides providing class rules, rewards, and expectations for the year.

18.     Later that week (in or about August 2017), Plaintiff was informed by the Principal that a parent complained to the school board and superintendent about Plaintiff promoting the "homosexual agenda" by discussing her "future wife." The Principal said, "I don't think you did anything wrong but I don't know what's going to happen."

19.     On or about August 25, 2017, Defendant Cantu met with Plaintiff to discuss the parent complaint. Defendant Cantu said, "You can't promote your lifestyle in the classroom." Plaintiff said, "We plan to get married. When I have a wife, I should be able to say this is my wife without fear of harassment. When I state that, it is a fact about my life, not a political statement." Defendant Cantu responded, "Well right now it kind of is (a political statement)."

20.     When Plaintiff inquired about changing policy to keep this from happening again Defendant Cantu said, "You are right. It is time to get the ball rolling on that. You need to realize this is Mansfield and there could be some pushback."

21.     Defendant Cantu told Plaintiff she had done nothing wrong.

22.     Later that night (in or about August 2017), Plaintiff sent an email to Defendant Mansfield ISD requesting it enact policy expressly prohibiting discrimination against lesbian and gays.

23.     On September 8, 2017, Defendant Cantu took Plaintiff out of her class for a meeting. Defendant Cantu informed Plaintiff there was another complaint from a parent. This complaint was from the same parent who made the previous complaint.

24.     Plaintiff had a wholistic approach to teaching about artists and relevant art history. Plaintiff taught about artist Jasper Johns and mentioned he served in the Korean War and he had a partner named Robert Rauchenberg, who was also an artist. This mirrored her lesson plan for the prior year. (It also reflects a basic historical fact that is reflected in encyclopedic sources and federal publications, such as a study by the U.S. Department of the Interior.)  Plaintiff also taught about other artists and their partners, including Frida Kahbo and Diego Rivera.

25.     Defendant Cantu said the complaint was that Plaintiff had shown sexually inappropriate images to children and asked her to sign a document essentially acknowledging as much. Plaintiff did no such thing and she refused to sign the documentation. Plaintiff said "This is discrimination. This is wrong and it might even be illegal. I'm not signing it." Plaintiff asked, "How long can I expect this to last?" Defendant Cantu said, "It could last two days, it could last two weeks."

26.     Since September 8, 2017, Mansfield ISD has punished Plaintiff by placing her on administrative leave for over eight months, including by disallowing her to from performing her duties as a teacher.  An eight-month administrative leave is unusually long.

27.     Plaintiff discovered the parent who made the initial two complaints enlisted a few other parents to complain about her.

28.     On October 30, 2017, Defendant Mansfield ISD asked for Plaintiff's resignation. Plaintiff refused.

29.     On January 9, 2018, Defendant Cantu and Defendant Mansfield ISD's attorney Mike Leasor met with Plaintiff. Leasor said maybe Plaintiff had an "agenda." Plaintiff had no agenda. Plaintiff indicated she was ready to go back to work at Charlotte Anderson Elementary.

30.     In late January 2018, Defendant Mansfield ISD first indicated it might not renew Plaintiff's contract and repeatedly made such suggestion thereafter.

31. Beginning in February 2018, Parents began to appear at several meetings of Defendant Mansfield ISD Board of Trustee meetings asking that Plaintiff be returned to the classroom because she was an outstanding teacher. This was embarrassing for Defendant Mansfield ISD and Defendant Vaszauskas.

32. In March 16, 2018, Plaintiff married her now-wife, Ms. Julie Vazquez. They have been together since May 2011.

33. On March 27, 2018, Defendant Mansfield ISD issued an official statement expressing its policies, procedures, and/or customs as applied to Plaintiff and similarly situated teachers in same-sex relationships (hereinafter "the Statement"). It is entitled "Mansfield ISD Statement Regarding Art Teacher," listed on School District letterhead, and labeled "For Immediate Release." The Statement was issued and/or approved by the Superintendent and/or Board.

34. The March 27 Statement demonstrates a policy (and/or practice or custom) of subordinating the Constitution's right to marriage (and the attendant benefits of marriage) beneath the "right [of a parent] to control the conversation" about the right to a same-sex marriage. The Statement does not explain the source or scope of a parent's purported "right to control the conversation" in school, especially when such would result in unlawful discrimination.

35. The March 27 Statement revealed a policy (and/or practice or custom) of requiring gay faculty to refrain from discussing their family or who they were (unlike heterosexual faculty) and gave a single parent veto power over a teacher's ability to reference same-sex marriage or relationships – even if other teachers in opposite-sex marriages would be allowed to do so in the same manner. As applied to Plaintiff, the Statement explains that "Mansfield ISD received complaints from parents," so school officials "met with the teacher [Plaintiff]" about the parents "concerns," but she "refused to follow" them.

36. The March 27 Statement evinces a policy (and/or practice or custom) only for gay/lesbian teachers whereby the School District derogates apparently exclusive decision-making power from the teacher (or School Board) to individual parents. The official Statement sets out that "parents have the right to control the conversation . . . [as it relates to] sexual orientation." "Parents hav[e] certain rights pertaining to the topics to which their children are exposed." Mansfield ISD indicates no such policy for other teachers in opposite-sex marriages or relationships; no such policy exists.

37. The March 27 Statement went on to explain that protections for gay/lesbians are not envisioned, let alone protected, by its current policies (and/or practices or customs). By contrast, the Statement suggested that "request[s] to have our nondiscrimination policies reviewed and/or revised with regard to LGBTQ rights" should go "through the District's established policy review committee."

38. The March 27 Statement made clear that if Plaintiff had not mentioned her prospective same-sex marriage with her now-wife, then there would have been no complaints or concerns. The Statement treats Plaintiff's reference of her impeding marriage as the dispositive fact in the application of its policy and/or custom (e.g., "discussion[] . . . about sexual orientation"; "conversation with students"; "expose[]" the "topic[]" of a same-sex marriage). The Statement also refers to "protect[ing] the learning environment of our students" in effect from references to same-sex marriages.

39. The March 27 Statement suggests that Plaintiff's references to her future wife was not "age appropriate," that it constituted a discussion of "sex", and that it "exposed" "children" to "[non-]age-appropriate instruction." No factual basis is provided. This reflects a policy (and/or practice or custom) of Mansfield ISD depicting and treating same-sex marriage as an inherently inappropriate or explicit subject. Mansfield ISD adopts no such policy (and/or customs or policies)

for a heterosexual teacher who mentions her husband or his wife. The March 27 Statement implies a policy (and/or custom or practice) that gay/lesbian teachers may have untoward or inappropriate sexual attitudes or predilections towards children (a longstanding, widely known, and baseless stereotype). The Statement also seriously overstates the extent of Plaintiff's reference to her prospective marriage, calling it, for example, "ongoing discussions . . . about sexual orientation."

40. The March 27 Statements adopts an exceptional new policy (and/or custom or practice) of publicly commenting on personnel matters when they relate to "disrupt[ive]" gay/lesbian issues. The Statement openly acknowledges that "the District's general rule [is] not to comment on employee personnel matters," since it "protects both the employee and the District." Nonetheless, the Statement applied this new exception to Plaintiff and publicly discussed her personnel matter in detailed and often knowingly erroneous terms. The public issuance of the Statement predictably generated widespread media attention.

41. The March 27 Statement generated significant public outcry and press about Plaintiff's employment situation, including public discussions about her sexual orientation and employment status, as well as criticism of Defendant Mansfield ISD.

42. The March 27 Statement coincided with a board meeting on March 27, 2018, further reaffirming that the Statement constituted the official policy and/or custom or practice of Defendant Mansfield ISD.

43. At this board meeting and afterwards, a number of parents and students stressed to Defendant Mansfield ISD that Plaintiff was a good teacher and should be brought back to the classroom.

44. The Board was taken aback by the public response in support of Plaintiff. Defendants responded by withdrawing plans to end Plaintiff's employment and instead taking steps to make

Plaintiff's employment intolerable in hopes that Plaintiff would quit and go away. However, to date, Plaintiff has not quit.

45.     By letter dated April 4, 2018, Plaintiff requested that she be allowed to return to Charlotte Anderson Elementary. Such request was never granted.

46.     On April 24, 2018, Defendant Mansfield ISD voted to renew Plaintiff's contract.

47.     While on administrative leave, Plaintiff's career was damaged by limiting her advancement, eligibility for promotions, and pay raises.

48.     Defendants' actions have damaged Plaintiff's career and imposing a stigma on Plaintiff, making it more difficult to obtain future employment in other school districts, especially as an elementary school teacher.

49.     By letter dated May 29, 2018, Defendant Mansfield ISD assigned Plaintiff to teach art at Lake Ridge High School despite her lack of experience teaching in a secondary school, thus, setting her up to fail. This position was more onerous and such assignment damaged Plaintiff's career as an educator. Plaintiff went from teaching classes of 18 to 21 students at Charlotte Anderson Elementary to teaching classes of 38 to 40 students at Lake Ridge High School, which significantly increased Plaintiff's workload. Plaintiff was required to develop entirely new curriculum for class suitable for high school students.

50.     After May 29, 2018, Plaintiff applied with several school districts in Texas for teaching positions. Other school districts, in Texas and beyond, regularly ask job applicants whether they have previously been placed in administrative leave and use this information to disqualify applicants. As part of these applications in response to questions asking for disclosure of any situations in which the applicant has been placed on administrative leave, Plaintiff disclosed that

Defendant Mansfield ISD had placed her on administrative leave. Plaintiff was not offered any positions by these school districts.

51. As a result of Defendants actions, Plaintiff began to experience emotional distress, extreme sadness, mental anguish and depression for which she sought treatment. Such In order to combat such emotional and mental harms, Plaintiff began performing music by playing several different musical instruments for patients in hospice facilities. Such activities somewhat lessened Plaintiff's emotional impact immediately after such activities, but such feelings continue.

52. The Supreme Court has repeatedly stated that the United States Constitution prohibits discrimination on the basis of race, color, national origin, sex and sexual orientation. A court in the Northern District of Texas held in *Gill v Devlin*, 867 F. Supp.2d 849 (N.D. Tex. 2012) that, since at least 2009, the Supreme Court has held that the United States Constitution prohibits discrimination based upon sexual orientation. While Defendant Mansfield ISD has enacted policies prohibiting discrimination on the basis of race, color, national origin, and sex, it has refused to enact a policy prohibiting discrimination on the basis of sexual orientation and status as gay/lesbian. Such failure tacitly encourages discrimination against persons like Plaintiff.

53. The Texas Association of School Boards (TASB) promulgates model policies for school districts to utilize when enacting policies, including a model policy prohibiting sexual orientation discrimination. Defendant Mansfield ISD is a member of TASB and routinely has enacted its model policies as its own. However, Defendant Mansfield ISD has refused to enact TASB's model policy that prohibits discrimination on the basis of sexual orientation and status as gay/lesbian. Such failure tacitly encourages discrimination against persons like Plaintiff.

54. Defendant Vaszauskas is a final policy maker for Defendant Mansfield ISD and he made all decisions regarding Plaintiff's administrative leave and subsequent actions.

55.     The stated reasons for the administrative leave, the transfer from Charlotte Anderson Elementary to Lake Ridge High School, and all other employment actions taken by Defendants are false, unworthy of credence, and otherwise pretextual for Defendants efforts to violate Plaintiff's constitutionally protected rights and status.

V.

CAUSES OF ACTION

### COUNT I
**(Violation of the Right to Marry)**

56.     The Supreme Court of the United States "has long held the right to marry is protected by the Constitution." *Obergefell v. Hodges*, 135 S. Ct. 2584, 2598 (2015). "In *Loving v. Virginia*, which invalidated bans on interracial unions as violative of the Equal Protection and Due Process Clauses, a unanimous Court held marriage is 'one of the vital personal rights essential to the orderly pursuit of happiness by free men.' The Court reaffirmed that holding in *Zablocki v. Redhail*, which held the right to marry was burdened by a law prohibiting fathers who were behind on child support from marrying. The Court again applied this principle in *Turner v. Safley*, which held the right to marry was abridged by regulations limiting the privilege of prison inmates to marry. Over time and in other contexts, the Court has reiterated that the right to marry is fundamental under the Due Process Clause." *Id.* (citations omitted).

The Supreme Court in *Obergefell* analyzed the principles and tradition underlying the right to marry and held that that analysis "compels the conclusion that same-sex couples may exercise the right to marry." *Id.* at 2599. The *Obergefell* decision has been widely applied in lower courts and its wisdom and precedential value has recently been reaffirmed by seven justices of the Supreme Court. *Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Comm'n*, 138 S. Ct. 1719, 1727 (2018).

Defendants burdened Plaintiff's right to marry by penalizing her mere mention of her marital plans, in violation of the Fourteenth Amendment and thus in violation of 42 U.S.C. § 1983. Had Plaintiff abandoned her marriage plans or hidden them when her colleagues in opposite-sex relationships need not, Defendants would not have punished her by placing her on an eight-month administrative leave, discussing non-renewal of her contract, asking Plaintiff to quit, issuing a false statement about Plaintiff's employment to the public contrary to usual practice, falsely suggesting she had engaged in unprofessional acts, creating a stigma about Plaintiff, removing her from an elementary school teaching position and assigning her to a more onerous position in a high school, and making it more difficult for her to obtain another teaching position with another school district by unnecessarily placing her on an extended administrative leave.

Such violations of the Constitution by Defendants provide Plaintiff causes of action against Defendants under 42 U.S.C. § 1983.

**COUNT II**
**(Violation of the Fourteenth Amendment of the U.S. Constitution)**

57.    The Supreme Court has repeatedly made clear has the "Constitution grants" gay/lesbian persons "equal dignity in the eyes of the law. . . ." *Obergefell*, 135 S. Ct. at 2608. This basic precept of the Equal Protection Clause undergirds a string of Supreme Court's decisions over the last quarter century. *See, e.g.*, *Lawrence v. Texas*, 539 U.S. 558 (2003); *Romer v. Evans*, 517 U.S. 620 (1996)]; *United States v. Windsor*, 570 U.S. 744 (2013). Indeed, just this year, a 7-2 majority of the Court stressed once more that "[o]ur society has come to the recognition that gay persons and gay couples cannot be treated as social outcasts or as inferior in dignity and worth. For that reason the laws and the Constitution can, and in some instances must, protect them in the exercise of their civil rights. The exercise of their freedom on terms equal to others must be given great weight and

respect by the courts." *Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Comm'n*, 138 S. Ct. 1719, 1727 (2018).

Under the Equal Protection Clause of the U.S. Constitution, even laws and policies that do not "burden[] a fundamental right nor targets a suspect class" must still "bears a rational relation to some legitimate end." *Romer*, 517 U.S. at 631 (1996). Rational basis review is flexible but not a rubber stamp. Indeed, the Supreme Court has held that state action that singles out and subordinates gay/lesbian persons "lacks a rational relationship to legitimate state interests," *id.* at 632, and is unconstitutional.

As reaffirmed by courts in this district, the Supreme Court has clearly held that the Constitution prohibits discrimination based upon sexual orientation at least since 2009. *See e.g.*, *Gill v Devlin*, 867 F. Supp.2d 849 (N.D. Tex. 2012).

Plaintiff further asserts that her sexual orientation and status as a gay/lesbian is a suspect classification that may only be abridged by a compelling state interest, although even under a rational basis analysis, Defendants actions are unconstitutional.

Defendants discriminated against Plaintiff because of her sexual orientation and her status as gay/lesbian and violated these tenets of the Fourteenth Amendment in a number of ways, including: its punishment of teachers who dare to mention their exercise of a constitutional right (even in passing or a high level of generality); its efforts to hide and subordinate same sex marriages and relationships through a policy of "Don't Ask, Don't Tell"; its March 27 Statement singling out LGBTQ employees for exceptional and discriminatory treatment; its categorical and stereotypical insinuation that referencing a same-sex marriage is "inappropriate" discussion of "sexual orientation" or "lifestyle" or promotion of a "homosexual agenda." In light of all the ways that Mansfield ISD openly failed to treat Plaintiff with "equal dignity in the eyes of the law,"

because of her sexual orientation, they violated the Fourteenth Amendment, thus violated 42 U.S.C. § 1983.

Defendants discriminated against Plaintiff because of her sexual orientation and her status as gay/lesbian by placing her on an eight-month administrative leave, discussing non-renewal of her contract, asking Plaintiff to quit, issuing a false statement about Plaintiff's employment to the public contrary to usual practice, falsely suggesting she had engaged in unprofessional acts, creating a stigma about Plaintiff, removing her from an elementary school teaching position and assigning her to a more onerous position in a high school, and making it more difficult for her to obtain another teaching position with another school district by unnecessarily placing her on an extended administrative leave.

Such violations of the Constitution by Defendants provide Plaintiff causes of action against Defendants under 42 U.S.C. § 1983.

**COUNT III.**
**(Violation of the Due Process Clause of the U.S. Constitution)**

58. The Due Process Clause of the U.S. Constitution establishes basic procedural safeguards, including for an individual employees' property interest in their job (as a public employee. Generally, this translates into at least notice and an opportunity to be advised of the ground for employment adverse action before such an action takes place (e.g., termination, suspension, or demotion).  *See, e.g., Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532 (1985).

Here, rather than going through normal disciplinary procedures or adhering to "general rule" about commenting on sensitive personnel matters, Mansfield ISD developed an exceptional process for employees who were gay/lesbian.  Namely, Mansfield derogated authority over gay/lesbian employees (and their freedom to marry) to any individual parent who complains or seeks to exercise a de facto veto power over their job and equal dignity.  That is highly irregular,

discriminatory, and also transgresses the Due Process Clause, in violation of 42 U.S.C. § 1983. Plaintiff should have had some fair opportunity to respond before her employer took adverse actions against her. Instead, she was put on administrative leave for over eight months summarily relegated to another school that would supposedly be more "appropriate."

Such violations of the Constitution by Defendants provide Plaintiff causes of action against Defendants under 42 U.S.C. § 1983.

## COUNT IV
### (Violations of the Equal Protection Clause of the Texas Constitution)

59. Defendants unconstitutionally discriminated against Plaintiff because of her sexual orientation and her status as gay/lesbian by placing her on an eight-month administrative leave, discussing non-renewal of her contract, asking Plaintiff to quit, issuing a false statement about Plaintiff's employment to the public contrary to usual practice, falsely suggesting she had engaged in unprofessional acts, creating a stigma about Plaintiff, removing her from an elementary school teaching position and assigning her to a more onerous position in a high school, and making it more difficult for her to obtain another teaching position with another school district by unnecessarily placing her on an extended administrative leave all because of her sexual orientation and status as a lesbian and her familial relationships in violation of the Equal Protection Clause of the Texas Constitution, Article I, § 3.

## COUNT V
### (Violations of the Equal Rights Amendment of the Texas Constitution)

60. Defendants unconstitutionally discriminated against Plaintiff because she is a female who chose to pursue marriage with another woman by placing her on an 8 month administrative leave, discussing non-renewal of her contract, asking Plaintiff to quit, issuing a false statement about Plaintiff's employment to the public contrary to usual practice, falsely suggesting she had engaged

in unprofessional acts, creating a stigma about Plaintiff, removing her from an elementary school teaching position and assigning her to a more onerous position in a high school, and making it more difficult for her to obtain another teaching position with another school district by unnecessarily placing her on an extended administrative leave all because of her sexual orientation and status as a lesbian, in violation of the Texas Equal Rights Amendment, Article I, § 3a.

## VI.

## DAMAGES

61. As a result of Defendants' actions, Plaintiff has suffered in the past, and in all reasonable likelihood, will suffer in the future, damages including, lost earning capacity, mental anguish, emotional pain and suffering, lost employment benefits, inconvenience, loss of enjoyment of life, damage to professional reputation, and other damages.

62. Moreover, Defendants engaged its actions with malice, therefore, Plaintiff is entitled to punitive damages.

63. Plaintiff seeks a declaration that Defendants illegally discriminated against Plaintiff because of her sexual orientation.

64. Plaintiff also seeks reinstatement to her position at Charlotte Anderson Elementary.

65. Plaintiff seeks attorney fees pursuant to 42 U.S.C. § 1988(b).

## VII.

## JURY DEMAND

66. Plaintiff demands a jury trial.

## VIII.

## PRAYER

67. WHEREFORE, Plaintiff prays that the Defendants be duly cited to appear and answer herein, that upon a final trial of this cause, Plaintiff recover:

1. Judgment against Defendants, for Plaintiff's damages as set forth above;

2. Reinstatement to her position at Charlotte Anderson Elementary;

3. A declaration that Defendants illegally discriminated against Plaintiff because of her sexual orientation and her status as lesbian/gay, because she is a female, and unlawfully burdened her right to marry;

4. Attorney's fees;

5. Interest on said judgment at the legal rate from date of judgment;

6. Prejudgment interest as allowed by law;

7. Costs of Court; and

8. Such other and further relief to which Plaintiff may be entitled.

Respectfully submitted,

/s/ JASON C.N. SMITH
JASON C.N. SMITH
State Bar No.  00784999

LAW OFFICES OF JASON SMITH
600 Eighth Avenue
Fort Worth, Texas 76104
Telecopier: (817) 334-0880
Telephone: (817) 334-0898
E-mail: jasons@letsgotocourt.com
ATTORNEYS FOR PLAINTIFF

CERTIFICATE OF SERVICE

      I hereby certify that on September 18, 2018, I electronically filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court and in accordance with the Federal Rules of Civil Procedure. The electronic case filing system sent a "Notice of Electronic Filing" to the following attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means: Thomas E. Myers.

                                        /s/ JASON C.N. SMITH
                                        JASON C. N. SMITH