IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **STACY BAILEY,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | **Civil Action No. 3:18-cv-1161-L** |
| **MANSFIELD INDEPENDENT SCHOOL** | § | |
| **DISTRICT; DR. JIM VASZAUSKAS; and** | § | |
| **DR. KIMBERLY CANTU,** | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendants' Rule 12(b)(6) Motion to Dismiss and Brief in Support (Doc. 14), filed October 2, 2018. Having considered the motion, response, reply, pleadings, and applicable law, and for the reasons that follow, the court **denies in part** and **grants in part** Defendants' Rule 12(b)(6) Motion to Dismiss (Doc. 14).

## I.    Factual Background and Procedural History

In this civil action, Plaintiff Stacy Bailey ("Bailey"), an elementary school art teacher employed by the Mansfield Independent School District ("Mansfield I.S.D."), asserts federal law claims pursuant to 42 U.S.C. § 1983 and state law claims against Defendants Mansfield I.S.D.; its Superintendent, Dr. Jim Vaszauskas ("Superintendent Vaszauskas"); and its Associate Superintendent for Human Resources, Dr. Kimberly Cantu ("Dr. Cantu"). Bailey alleges Defendants violated her rights to equal protection and due process under the Fourteenth Amendment of the United States Constitution by unlawfully discriminating against her because of her sexual orientation and status as a lesbian, including stigmatizing her, making false allegations that she was engaging

in unprofessional acts, placing her on an eight-month administrative suspension, and eventually transferring her to a different school after she allegedly shared a photograph of her same-sex fiancé along with other family photographs with second-grade students and mentioned to her fourth-grade students that a certain artist was married to someone of the same sex. Bailey further alleges Defendants' actions burdened her constitutionally protected right to marry. In addition, Bailey brings state law claims against Defendants for alleged violations of the Equal Protection Clause of the Texas Constitution, Article I, § 3, and the Texas Equal Rights Amendment, Article I, § 3a.

The court now sets out the allegations upon which it relies in deciding the pending motion to dismiss, accepting all well-pleaded facts in the complaint as true and viewing them in the light most favorable to Bailey. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). The facts are drawn from Plaintiff's First Amended Complaint ("Complaint"), the live pleading. *See* First Am. Compl. (Doc. 13).

Bailey is a teacher with Mansfield I.S.D. who taught art for ten years at Charlotte Anderson Elementary School. Bailey "is lesbian/gay and was born that way." *Id.* ¶ 15. Mansfield I.S.D. repeatedly gave Bailey exemplary performance evaluations and, for two of her ten years, selected her as "Teacher of the Year." Bailey was open about her sexual orientation at work among her colleagues but never used sexual or mature terms with her students.

On August 23, 2017, while providing an introduction to a class in the form of a "First Day of School" PowerPoint, Bailey shared various photographs of her parents, her family, her "future wife," her best friends, and pictures of herself as a child in an effort to engage the students. "The photo of [Bailey's] future wife was an endearing photo of [her] and her future wife dressed as characters from the children's movie 'Finding Nemo.'" *Id.* ¶ 17. Bailey also showed her second-

grade students slides providing class rules, rewards, and expectations for the year. Other teachers, administrators, and employees of Mansfield I.S.D. "who are heterosexual regularly mention their respective spouse[s] while in school, have photos of their famil[ies], fiancés and spouses in the work place, or reference their famil[ies], fiancés and spouse[s] as part of conversations with students, lessons, or other classroom-related interactions." *Id.* ¶ 14.

Later that week, the principal of Charlotte Anderson Elementary School informed Bailey that a parent complained to the school board and Superintendent Vaszauskas about her "promoting the 'homosexual agenda' by discussing her 'future wife.'" *Id.* ¶ 18. The principal stated, "I don't think you did anything wrong but I don't know what's going to happen." *Id.* On or about August 25, 2017, Dr. Cantu met with Bailey to discuss the parent's complaint, stating, "You can't promote your lifestyle in the classroom." *Id.* ¶ 19. Bailey responded, "We plan to get married. When I have a wife, I should be able to say this is my wife without fear of harassment. When I state that, it is a fact about my life, not a political statement." *Id.* Dr. Cantu responded, "Well right now it kind of is (a political statement)." *Id.* When Bailey inquired about changing policy to keep this from happening again, Dr. Cantu said, "You are right. It is time to get the ball rolling on that. You need to realize this is Mansfield and there could be some pushback." *Id.* ¶ 20. Dr. Cantu told Bailey she had done nothing wrong. That same evening, Bailey sent an e-mail to Mansfield I.S.D. requesting it enact a policy prohibiting discrimination against lesbians and gays.

Bailey had "a []holistic approach to teaching about artists and relevant art history. [She] taught about artist Jasper Johns and mentioned he served in the Korean War and he had a partner named Robert Rauchenberg, who was also an artist." *Id.* ¶ 24. This mirrored her lesson plan for the prior year and "reflects a basic historical fact that is reflected in encyclopedic sources and federal

publications, such as a study by the U.S. Department of the Interior." *Id.* Bailey also taught about other artists and their partners, including Frida Kahlo and Diego Rivera. *Id.*

On September 8, 2017, Dr. Cantu took Bailey out of her class for a meeting and informed her that another parent had complained. *Id.* ¶ 23. This complaint was from the same parent who made the previous complaint. *Id.* Dr. Cantu explained to Bailey that the complaining parent stated Bailey had shown sexually inappropriate images to children and asked her to sign a document acknowledging that she had. *Id.* ¶ 25. Bailey did not show sexually inappropriate images to children and refused to sign the document. *Id.* Bailey stated to Dr. Cantu, "This is discrimination. This is wrong and it might even be illegal. I'm not signing it." *Id.*

Since September 8, 2017, Mansfield I.S.D. has punished Bailey by placing her on administrative leave for over eight months. *Id.* ¶ 26. On October 30, 2017, Mansfield I.S.D. asked Bailey for her resignation, but she refused to resign. *Id.* ¶ 28. On January 9, 2018, Dr. Cantu and Mansfield I.S.D.'s attorney Mike Leasor met with Bailey and suggested she had an "agenda." Bailey stated she had no agenda and was ready to go back to work at Charlotte Anderson Elementary. *Id.* ¶ 29. In late January 2018, Mansfield I.S.D. first indicated it might not renew Bailey's contract. *Id.* ¶ 30.

Beginning in February 2018, parents began to attend meetings of Mansfield I.S.D.'s Board of Trustees asking that Bailey be returned to the classroom because she was an outstanding teacher. This was embarrassing for Mansfield I.S.D. and Superintendent Vaszauskas. *Id.* ¶ 31.

On March 16, 2018, Bailey married her now-wife, Ms. Julie Vazquez. *Id.* ¶ 32. On March 27, 2018, Mansfield I.S.D., with the approval of its Board of Trustees and Superintendent Vaszauskas, issued an official statement for immediate release, *id.* ¶ 33, stating:

It is the responsibility of Mansfield ISD to protect the learning environment of our students. We also believe it is paramount to partner with our parents in the education of their children. Therefore, parents have the right to control the conversation with their children as it relates to religion, politics, sex/sexual orientation, etc.

Further, it is the District's general rule not to comment on employee personnel matters. This protects both the employee and the District. However, with regard to elementary school art teacher Stacy Bailey, the District now finds itself in a situation in which misinformation about her personnel matter and the resulting disruption of the campus educational environment leads the District to comment.

The District's concerns regarding Ms. Bailey are not about her request to have our nondiscrimination policies reviewed and/or revised with regard to LGBTQ rights. Mansfield ISD welcomes that discussion through the District's established policy review committee. Rather, the District's concern is that Ms. Bailey insists that it is her right and that it is age appropriate for her to have ongoing discussions with elementary-aged students about her own sexual orientation, the sexual orientation of artists, and their relationships with other gay artists.

Mansfield ISD received complaints from parents about Ms. Bailey discussing her sexual orientation with elementary-aged students. After receiving the complaints, administration met with the teacher more than once regarding the concerns. However, Ms. Bailey refused to follow administration's directions regarding age-appropriate conversations with students.

Again, this situation is not about Ms. Bailey's inquiries regarding the District's nondiscrimination policies. Rather, it is a matter of parents having certain rights pertaining to the topics to which their children are exposed and the District's right and responsibility to ensure age-appropriate instruction.

Defs.' Rule 12(b)(6) Mot. to Dismiss, Ex. A (Doc. 14) ("Mansfield I.S.D. Press Release").[1]

The Mansfield I.S.D. Press Release generated significant public outcry and press about

Bailey's employment situation, including public discussions about her sexual orientation and

---

[1] Though review of a Rule 12(b)(6) motion to dismiss focuses on the contents of the pleadings and the documents attached thereto, "documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000); *Villareal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 767 (5th Cir. 2016). The Mansfield I.S.D. Press Release, attached as Exhibit A to Defendants' Rule 12(b)(6) Motion to Dismiss, is referred to in Bailey's First Amended Complaint and central to her claims. Accordingly, the court may consider it as part of the pleadings in ruling upon Defendants' motion to dismiss.

employment status, as well as criticism of Mansfield I.S.D. Am. Compl. ¶ 41. It also coincided with a meeting of the Board of Trustees on March 27, 2018. *Id.* ¶ 42. At the board meeting, a number of parents and students stressed that Bailey was a good teacher and should be brought back to the classroom. *Id.* ¶ 43. Mansfield I.S.D.'s Board of Trustees was taken aback by the public response in support of Bailey and responded by withdrawing plans to end Bailey's employment and instead began taking steps to make her employment intolerable in hopes that she would quit, which she did not. *Id.* ¶ 44. By letter dated April 4, 2018, Bailey requested that she be allowed to return to Charlotte Anderson Elementary School, which never occurred. *Id.* ¶ 45. On April 24, 2018, Mansfield I.S.D. voted to renew Bailey's contract, although it did not allow her to return to Charlotte Anderson Elementary School. *Id.* ¶ 46.

While on administrative leave, Bailey's career was damaged by limiting her advancement, eligibility for promotions, and pay raises. *Id.* ¶ 47. Defendants' actions have damaged Bailey's career and imposed a stigma on her, making it more difficult to obtain future employment in other school districts, especially as an elementary school teacher. *Id.* ¶ 48.

By letter dated May 29, 2018, Mansfield I.S.D. assigned Bailey to teach art at Lake Ridge High School despite her lack of experience teaching in a secondary school. *Id.* ¶ 49. This position was more onerous and damaged Bailey's career as an educator. *Id.* Bailey went from teaching classes of 18 to 21 students at Charlotte Anderson Elementary School to teaching classes of 38 to 40 students at Lake Ridge High School, which significantly increased her workload. *Id.* She was required to develop an entirely new curriculum for class suitable for high school students. *Id.*

After May 29, 2018, Bailey applied with several school districts in Texas for teaching positions. *Id.* ¶ 50. Other school districts, in Texas and beyond, regularly ask job applicants whether

they have previously been placed on administrative leave and use this information to disqualify applicants. *Id.* In response to questions on these applications asking for disclosure of any situations in which the applicant has been placed on administrative leave, Bailey disclosed that Mansfield I.S.D. had placed her on administrative leave. She was not offered any positions by these school districts. *Id.*

As a result of Defendants' actions, Bailey began to experience emotional distress, extreme sadness, mental anguish, and depression, for which she sought treatment. *Id.* ¶ 51. In order to combat such emotional and mental harms, she began performing music by playing several different musical instruments for patients in hospice facilities. *Id.* Such activities somewhat lessened her emotional distress, but such feelings continue. *Id.*

Although Mansfield I.S.D. has enacted policies prohibiting discrimination on the basis of race, color, national origin, and sex, it has refused to enact a policy prohibiting discrimination on the basis of sexual orientation and status as gay or lesbian. *Id.* ¶ 52. The Texas Association of School Boards ("TASB") promulgates model policies for school districts to use when enacting policies, including a model policy prohibiting sexual orientation discrimination. *Id.* ¶ 53. Mansfield I.S.D. is a member of TASB and routinely has enacted TASB's model policies as its own. *Id.* Mansfield I.S.D., however, has refused to enact TASB's model policy that prohibits discrimination on the basis of sexual orientation and status as gay and lesbian. *Id.*

On May 8, 2018, Bailey filed Plaintiff's Original Complaint ("Original Complaint"), which Defendants moved to dismiss for failure to state a claim. On August 28, 2018, the court granted Bailey's motion for leave to file an amended complaint to address various pleading deficiencies Defendants had raised in their motion to dismiss, and, therefore, denied as moot Defendants' motion

to dismiss the Original Complaint. On September 18, 2018, Bailey filed her First Amended Complaint ("Amended Complaint") against Superintendent Vaszauskas and Dr. Cantu, in their respective individual and official capacities,[2] and against Mansfield I.S.D., alleging Defendants violated: (1) the Equal Protection Clause of the Fourteenth Amendment by unlawfully discriminating against her because of her sexual orientation and status as a lesbian; (2) the Equal Protection Clause and Due Process Clause of the Fourteenth Amendment by burdening her constitutionally protected right to marry; (3) the Due Process Clause of the Fourteenth Amendment by derogating authority over gay and lesbian employees to individual parents who complain or seek to exercise a de facto veto power over their job and equal dignity (against Mansfield I.S.D. only); and (4) the Equal Protection Clause of the Texas Constitution, Article I, § 3, and the Texas Equal Rights Amendment, Article I, § 3a. She seeks a declaratory judgment that Defendants illegally discriminated against her because of her sexual orientation, monetary damages, punitive damages, reinstatement to her position at Charlotte Anderson Elementary School, and attorney's fees.

On October 2, 2018, Defendants filed a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *See* Doc. 14. As a threshold matter, Defendants argue jointly that Bailey's claims must be dismissed because her allegations are too speculative and

---

[2] In contrast to Bailey's section 1983 claims seeking to impose personal liability upon Superintendent Vaszauskas and Dr. Cantu in their respective individual capacities for actions taken under color of state law, Bailey's section 1983 claims against Superintendent Vaszauskas and Dr. Cantu in their respective official capacities are treated as claims against the governmental entity, here, Mansfield I.S.D. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (citing *Brandon v. Holt*, 469 U.S. 464, 471-72 (1985)) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."); *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690, n. 55 (1978) (Official-capacity suits, in contrast to individual-capacity suits, "generally represent only another way of pleading an action against an entity of which an officer is an agent[.]").

conclusory, and that she resorts to group pleading. Mansfield I.S.D. argues that Bailey's section 1983 claims must be dismissed because she fails to adequately plead municipal liability. Superintendent Vaszauskas and Dr. Cantu, sued in their respective individual capacities, contend that Bailey's section 1983 claims must be dismissed because they are entitled to qualified immunity. The motion has been fully briefed and is ripe for adjudication.

## II.    Legal Standard - Federal Rule of Civil Procedure 12(b)(6)

To defeat a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008); *Guidry v. American Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007). A claim meets the plausibility test "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).  While a complaint need not contain detailed factual allegations, it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (citation omitted). The "[f]actual allegations of [a complaint] must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (quotation marks, citations, and footnote omitted). When the allegations of the pleading do not allow the court to infer more than the mere possibility of wrongdoing, they fall short of showing that the pleader is entitled to relief. *Iqbal*, 556 U.S. at 679.

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier,* 509 F.3d at 675; *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In ruling on such a motion, the court cannot look beyond the pleadings. *Id.*; *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). Likewise, "'[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims.'" *Id.* (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). In this regard, a document that is part of the record but not referred to in a plaintiff's complaint *and* not attached to a motion to dismiss may not be considered by the court in ruling on a 12(b)(6) motion. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 820 & n.9 (5th Cir. 2012) (citation omitted). Further, it is well-established and "'clearly proper in deciding a 12(b)(6) motion [that a court may] take judicial notice of matters of public record.'" *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (quoting *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) (citing *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994)).

The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when it is viewed in the light most favorable to the plaintiff. *Great Plains Trust Co. v. Morgan Stanley Dean Witter*, 313 F.3d 305, 312 (5th Cir. 2002). While well-pleaded facts of a complaint are to be accepted as true, legal conclusions are not "entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679 (citation omitted). Further, a court is not to strain to find inferences favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions, or legal conclusions. *R2 Invs.*

*LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (citations omitted). The court does not evaluate the plaintiff's likelihood of success; instead, it only determines whether the plaintiff has pleaded a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004). Stated another way, when a court deals with a Rule 12(b)(6) motion, its task is to test the sufficiency of the allegations contained in the pleadings to determine whether they are adequate enough to state a claim upon which relief can be granted. *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977); *Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1401 (5th Cir. 1996), *rev'd on other grounds*, 113 F.3d 1412 (5th Cir. 1997) (en banc). Accordingly, denial of a 12(b)(6) motion has no bearing on whether a plaintiff ultimately establishes the necessary proof to prevail on a claim that withstands a 12(b)(6) challenge. *Adams*, 556 F.2d at 293.

## III. Analysis

Bailey sues Mansfield I.S.D. pursuant to 42 U.S.C. § 1983,[3] alleging it has an official policy of discriminating based on sexual orientation in violation of her rights to equal protection of the laws, to marry, and to procedural due process. Bailey sues Superintendent Vaszauskas and Dr. Cantu, in their respective individual capacities, pursuant to 42 U.S.C. § 1983. She alleges they discriminated against her based on her sexual orientation and status as a lesbian in violation of her right to equal protection under the Fourteenth Amendment, as well as her constitutionally protected right to marry.

---

[3] Title 42 U.S.C. § 1983 does not grant substantive rights, but "provides a civil remedy in federal court for violations, under color of state law, of a person's constitutionally recognized rights, privileges, or immunities." *Miller v. Metrocare Servs.*, 809 F.3d 827, 833 (5th Cir. 2016) (quoting *Bledsoe v. City of Horn Lake*, 449 F.3d 650, 653 (5th Cir. 2006)). Section 1983 provides in part as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law.

After considering arguments made jointly by Defendants, the court will address Mansfield I.S.D.'s motion to dismiss for failure to allege adequately municipal liability under section 1983, followed by Superintendent Vaszauskas's and Dr. Cantu's respective arguments related to qualified immunity.

## A.    Specificity of Pleadings

As a threshold matter, Defendants urge the court to dismiss the Amended Complaint because it "fails to rise above conclusory and speculative allegations against Defendants." Defs.' Mot. to Dismiss 4 (Doc. 14). Relatedly, Defendants assert that Bailey directs her allegations against Defendants as a group, and that her allegations of collective wrongdoing are insufficient to state a plausible claim against a specific defendant, requiring dismissal under Rule 12(b)(6). *See id.* ("Conclusory and vague allegations and references to 'Defendants' in general are not sufficient to support a claim.").

The court rejects Defendants' argument. As can be discerned from the court's recitation of the factual allegations, *supra*, and accepting all well-pleaded facts as true, the Amended Complaint is sufficiently detailed. Although Defendants correctly note that Bailey, at times, lumps Defendants together as a group, read in the context of her other allegations, the instances of group pleading have not prevented the court from discerning which defendants are allegedly responsible for which allegedly unlawful acts. Accordingly, the court will deny Defendants' motion to dismiss the Amended Complaint based on group pleading or as too speculative or conclusory to state a claim.

## B.    Section 1983 Claims Against Mansfield I.S.D.

A governmental entity, such as Mansfield I.S.D., can be sued and subjected to monetary damages and injunctive relief under 42 U.S.C. § 1983 only if its official policy or custom causes a person to be deprived of a federally protected right. *Board of the Cty. Comm'rs of Bryan Cty. v.*

*Brown*, 520 U.S. 397, 403 (1997); *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). "Parties can sue a municipality that has violated their constitutional rights 'under color of any statute, ordinance, regulation, custom, or usage.'" *Advanced Tech. Bldg. Solutions, L.L.C. v. City of Jackson*, 817 F.3d 163, 165 (5th Cir. 2016) (quoting 42 U.S.C. § 1983 and citing *Monell*, 436 U.S. at 690). As a governmental entity, Mansfield I.S.D. *cannot* be liable for civil rights violations under a theory of respondeat superior or vicarious liability. *Monell*, 436 U.S. at 691; *see also Barrow v. Greenville Indep. Sch. Dist.*, 480 F.3d 377, 380 (5th Cir. 2007) ("A school district has no vicarious liability under § 1983."); *Baskin v. Parker*, 602 F.2d 1205, 1208 (5th Cir. 1979) (recognizing that "state vicarious liability doctrines are inapplicable in [section] 1983 suits.").

Official policy is defined as:

1.  A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the [school district] lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or

2.  A persistent, widespread practice of [school district] officials or employees which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents [school district] policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the [school district] or to an official to whom that body had delegated policy-making authority.

*Eugene v. Alief Indep. Sch. Dist.*, 65 F.3d 1299, 1304 (5th Cir. 1995); *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (*en banc*) (per curiam); *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984) (*en banc*) (per curiam). To state a claim under section 1983 against a school district, the "complaint must allege sufficient factual content to permit the reasonable inference (1) that a constitutional violation occurred and (2) that an 'official policy' attributable to the school district's policymakers (3) 'was the moving force' behind it." *Littell v. Houston Indep. Sch. Dist.*,

894 F.3d 616, 622-23 (5th Cir. 2018) (citations omitted); *see also Doe ex rel. Magee v. Covington Cty. Sch. Dist.*, 675 F.3d 849, 866 (5th Cir. 2012) (en banc) (To hold a municipality or school district liable under 42 U.S.C. § 1983 "requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose moving force is the policy or custom.").[4]

Regardless of the required proof needed to prevail ultimately on a given claim, to survive a motion to dismiss, claims within the live pleading must contain sufficient factual allegations to satisfy Federal Rule of Civil Procedure 8(a)(2), as interpreted in *Iqbal* and *Twombly*, *supra*. When ruling on a Rule 12(b)(6) motion, a court must examine the factual allegations of the live pleading to determine whether asserted claims survive the motion. *See Groden v. City of Dallas*, 826 F.3d 280, 282-83 (5th Cir. 2016).

Mansfield I.S.D. argues that Bailey fails to state a plausible claim against it pursuant to 42 U.S.C. § 1983 because she fails to allege an underlying constitutional violation and, even were the court to find that she had alleged a violation, "there is no allegation before the Court of a policy, practice, or custom [that] violates any of Plaintiff's federally-protected rights." Defs.' Mot. to Dismiss 14. According to Defendants, Bailey does not identify any "policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the District's Board of Trustees [that] has deprived her of a federally-protected right [or] a persistent, widespread practice that is so common and well-settled as to constitute a custom that fairly represents District policy." *Id.*

---

[4] Liability must rest on official policy, meaning the governmental entity's policy, and not the policy of an individual official. *Bennett v. City of Slidell*, 728 F.2d 762, 769 (5th Cir. 1984) (en banc). The official complained of must possess

> final authority to establish [school district] policy with respect to the action ordered. . . .The official must also be responsible for establishing final government policy respecting such activity before the [school district or city] can be held liable. . . . [W]hether an official had final policymaking authority is a question of state law.

*Pembaur v. City of Cincinnati*, 475 U.S. 469, 481-82 (1986).

Mansfield I.S.D. also argues that even had she properly pleaded such a custom, policy, or practice, "[it is] still entitled to dismissal of Plaintiff's claims due to the absence of any pleading of deliberate indifference by [it] in promulgating the policy that caused [her] constitutional violations."[5] *Id.*

Bailey counters that she has adequately alleged liability of the school district through the existence of a discriminatory policy—the Mansfield I.S.D. Press Release—that caused a deprivation of her federally protected rights under the Fourteenth Amendment. Viewing the well-pleaded allegations as true, and having reviewed the Mansfield I.S.D. Press Release, which is part of the pleadings, *see supra* note 1, the court agrees. For the reasons that follow, the court concludes that Bailey has stated a section 1983 claim against Mansfied I.S.D. for violating her rights to equal protection of the laws and procedural due process, but not her right to marry.

Before turning to Mansfield I.S.D.'s argument that Bailey fails to identify any "policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the District's Board of Trustees which has deprived her of a federally-protected right," Defs.' Mot. to Dismiss 14, the court addresses whether she has stated a claim for an underlying constitutional violation.

---

[5] Mansfield I.S.D. also argues that Bailey has failed to allege adequately that Superintendent Vaszuaskas was a policymaker with final authority. The court has already determined, in a prior decision denying Bailey leave to file a surreply, that Bailey has failed to allege that Superintendent Vaszauskas is a final policymaker of Defendant Mansfield I.S.D. for purposes of imposing liability under section 1983 against Mansfield I.S.D. *See* Mem. Op. & Order 5 (Doc. 8). As the court determined, Bailey's contention that various policies rendered Dr. Vaszauskas a final policymaker for purposes of imposing liability under section 1983 against Mansfield I.S.D. "rests on a misunderstanding of municipal liability under section 1983 and, from what the court can discern, possible confusion concerning the difference between a final decisionmaker and a final policymaker under section 1983 jurisprudence." *Id.* The court incorporates its previous memorandum opinion and order (Doc. 8) by reference as if fully set forth verbatim herein.

**Memorandum Opinion and Order – Page 15**

1.    *Has Bailey Alleged an Underlying Constitutional Violation?*

a.    *Right to Marry*

In Count I, Bailey alleges "Defendants burdened her right to marry by penalizing her mere mention of her marital plans, in violation of the Fourteenth Amendment and thus in violation of 42 U.S.C. § 1983." Am. Comp. ¶ 56. She further alleges that, had she abandoned her marriage plans or hidden them when her colleagues in opposite-sex relationships need not, she would still be employed at Charlotte Anderson Elementary School.

The Supreme Court has affirmed that "the right to marry is a fundamental right inherent in the liberty of the person, and under the Due Process and Equal Protection Clauses of the Fourteenth Amendment couples of the same-sex may not be deprived of that right and that liberty." *Obergefell v. Hodges*, __ U.S. __, 135 S. Ct. 2584, 2604 (2015). Consequently, it pronounced that same-sex couples must be allowed to join in civil marriage "on the same terms and conditions as opposite-sex couples." *Id.* at 2605.

As Mansfield I.S.D. correctly notes, Bailey does not plead any facts to support that her marriage was halted, delayed, or that she was otherwise unable to marry as a result of the actions made the basis of her amended complaint. She alleges that on March 16, 2018, more than ten days prior to the Mansfield I.S.D. Press Release, she married Ms. Julie Vazquez. Am. Compl. ¶ 32. Based on these allegations, the court concludes that Bailey fails to allege a constitutional deprivation of her right to marry. Accordingly, the court will grant Mansfield I.S.D.'s motion to dismiss Bailey's section 1983 claim against it based on an alleged violation of her right to marry and dismiss this claim pursuant to Rule 12(b)(6).

b.      *Equal Protection*

In Count II, Bailey alleges Defendants discriminated against her because of her sexual orientation in violation of her rights to equal protection of the laws under the Fourteenth Amendment.[6] As previously set out above, Bailey alleges she taught art to elementary school students for a period of ten years and distinguished herself during this time as an exemplary teacher. She alleges that things changed when, in August 2017, as part of a back-to-school event, she shared a photograph of her same-sex fiancé along with other family photographs with second-grade students and, subsequently, mentioned to her fourth-grade students that a certain artist was married to someone of the same sex. She alleges that other teachers, administrators, and employees of Mansfield I.S.D. "who are heterosexual regularly mention their respective spouse[s] while in school, have photos of their famil[ies], fiancés and spouses in the work place, or reference their famil[ies], fiancés and spouse[s] as part of conversations with students, lessons, or other classroom-related interactions." Am. Compl. ¶ 14. She alleges that, unlike those heterosexual teachers and administrators who shared photographs and stories about opposite sex partners, Defendants discriminated against her because she is a lesbian:

> by placing her on an eight-month administrative leave, discussing non-renewal of her contract, asking [her] to quit, issuing a false statement about [her] employment to the public contrary to usual practice, falsely suggesting she had engaged in unprofessional acts, creating a stigma about [her], removing her from an elementary school position and assigning her to a more onerous position in a high school, and

---

[6] In support of her equal protection claim, Bailey references the Supreme Court's decision in *Loving v. Virginia*, invalidating Virginia's miscegenation statutes on equal protection grounds. *See Loving v. Virginia*, 388 U.S. 1 (1967). The court rejects Bailey's suggestion that this case is a variant of *Loving*. The miscegenation laws at issue in *Loving* employed invidious racial classifications, were inherently racially discriminatory, and were analyzed under the strict scrutiny standard. Discrimination based on sexual orientation, by contrast, is analyzed under the rational relationship test, as sexual orientation is not considered a suspect class by the Supreme Court or this Circuit. *See Romer v. Evans*, 517 U.S. 620, 631-32 (1996); *Johnson v. Johnson*, 385 F.3d 503, 532 (5th Cir. 2004).

making it more difficult for her to obtain another teaching position with another school district by unnecessarily placing her on extended administrative leave.

*Id.* ¶ 57.

The Fourteenth Amendment provides in pertinent part:

> No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. Const. amend. XIV, § 1. The Equal Protection Clause of the Fourteenth Amendment requires that similarly situated persons be treated alike. *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439 (1985); *Plyler v. Doe*, 457 U.S. 202, 216 (1983). To raise properly her equal protection claim, Bailey must set forth allegations which, if proved, demonstrate that "[s]he received treatment different from that received by similarly-situated individuals and that the unequal treatment stemmed from discriminatory intent." *Priester v. Lowndes County*, 354 F.3d 414, 424 (5th Cir. 2004). A "[d]iscriminatory purpose in an equal[-]protection context implies that the decision-maker selected a particular course of action at least in part because of, and not simply in spite of, the adverse impact it would have on an identifiable group." *Woods v. Edwards*, 51 F.3d 577, 580 (5th Cir.1995) (quoting *United States v. Galloway*, 951 F.2d 64, 65 (5th Cir.1992)).

The court concludes that the pleadings summarized previously, and taken as true, are sufficient to allege facts which, if proved, demonstrate that Bailey, a lesbian, received different treatment from heterosexual teachers that engaged in similar conduct, and that the unequal treatment stemmed from discrimination based on her sexual orientation. Further, the alleged discrimination in this case is based on sexual orientation. Although neither the Supreme Court nor the Fifth Circuit

"has recognized sexual orientation as a suspect classification" or protected group, governmental action may violate the equal protection rights of a homosexual person "if it disadvantages homosexuals for reasons lacking any rational relationship to legitimate governmental aims." *Johnson v. Johnson*, 385 F.3d 503, 532 (5th Cir. 2004); *accord Whiting v. Univ. of S. Miss.*, 451 F.3d 339, 348 (5th Cir. 2006) (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000), and recognizing that absent membership in a suspect or protected class, a plaintiff can succeed on a "class of one" equal protection claim only when there is "no rational basis for the difference in treatment").

Under rational basis review, "legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *City of Cleburne*, 473 U.S. at 440 (citations omitted). Courts generally should not "closely scrutinize legislative choices as to whether, how, and to what extent" the State's interests are pursued. *Id.* "[T]he Equal Protection Clause requires only a rational means to serve a legitimate end." *Id.*

"Despite its deference, however, the rational basis test is not a toothless one." *Greater Hous. Small Taxicab Co. Owners Ass'n v. City of Hous., Tex.*, 660 F.3d 235, 239 (5th Cir. 2011) (citation omitted). "[E]ven the standard of rationality as we so often have defined it must find some footing in the realities of the subject addressed by the legislation." *Heller v. Doe*, 509 U.S. 312, 321 (1993). A "State may not rely on a classification whose relationship to an asserted goal is so attenuated as to render the distinction arbitrary or irrational. Furthermore, some objectives—such as a bare desire to harm a politically unpopular group—are not legitimate state interests." *City of Cleburne*, 473 U.S. at 446-47 (citations, quotation marks, and ellipses omitted). The public's "mere negative attitudes,

or fear" of a minority group "are not permissible bases" for differential treatment, since the law cannot give effect to private biases. *Id.* at 448.

Claims under the Equal Protection Clause can include both tangible and intangible injuries. As noted in *Heckler v. Matthews*,

> discrimination itself, by perpetuating archaic and stereotypic notions or by stigmatizing members of the disfavored group as innately inferior and therefore as less worthy participants in the political community, can cause serious noneconomic injuries to those persons who are personally denied equal treatment solely because of their membership in a disfavored group.

465 U.S. 728, 739-40 (1984) (quotation marks and citation omitted).[7]

In addition to *City of Cleburne*, in which the Supreme Court declared unconstitutional under the rational basis test a local ordinance that required a special use permit for homes for the "mentally retarded," but not for nursing homes, apartment houses, dormitories, hospitals, and similar multiple occupant dwellings, other Supreme Court precedents have similarly recognized that when state action reflects an animus directed at a defined minority, it cannot be supported under the Equal Protection Clause, even under the deferential rational basis test. *See, e.g.*, *Harris v. McRae,* 448 U.S. 297, 322 (1980) (noting that the Equal Protection Clause grants all Americans the "right to be free from invidious discrimination in statutory classifications and other governmental activity"); *New York Transit Authority v. Beazer*, 440 U.S. 568, 593 n.40 (1979) (noting that the Court's "equal protection cases have recognized a distinction between invidious discrimination—i.e., classifications drawn with an evil eye and an unequal hand or motivated by a feeling of antipathy against, a specific

---

[7] Defendants' argument that Bailey has failed to allege she suffered damages does not take into account her alleged intangible injuries related to violations of the right to equal protection.

group of residents"—and other evenhanded classifications) (internal quotation marks and citations omitted).

In *Romer v. Evans*, 517 U.S. 620 (1996), the Court concluded that an amendment to Colorado's state constitution, prohibiting any legislation or judicial action designed to protect the status of a person based on sexual orientation, violated the Fourteenth Amendment. The Court noted that under the ordinary deferential equal protection standard—that is, rational basis—it would "insist on knowing the relation between the classification adopted and the object to be obtained." *Id.* at 632. It is this search for a "link" between classification and objective, noted the Court, that "gives substance to the Equal Protection Clause." *Id.* In *Romer*, the Court concluded that the "link" was absent. Noting that the "inevitable inference" that arises from a law of this sort is that it is "born of animosity toward the class of persons affected," *id.* at 634, the Court described the amendment as "a status-based enactment divorced from any factual context from which we could discern a relationship to legitimate state interests." *Id.* at 635.

The question, therefore, is whether bias concerning Bailey's sexual orientation furnishes a rational basis for Mansfield I.S.D.'s decision to place her on an eight-month administrative leave and, ultimately, not allow her to return as a teacher to Charlotte Anderson Elementary School, causing the attendant harm and stigma she details in her pleadings. The "negative reaction" some members of the community may have to homosexuals is not a proper basis for discriminating against them. *See, e.g., Brown v. Board of Educ.*, 347 U.S. 483, 495 (1954) (In the context of race, declaring that racial school segregation is unconstitutional despite the widespread acceptance of the practice in the community and in the country). If the community's perception is based on nothing more than unsupported assumptions, outdated stereotypes, and animosity, it is necessarily irrational and under

*Romer* and other Supreme Court precedent, provides no legitimate support for Mansfield I.S.D.'s decisions.

On the face of the pleadings, which includes the Mansfield I.S.D. Press Release, there is no job-related justification for placing Bailey on an eight-month administrative leave and then not allowing her to return as an elementary school teacher at Charlotte Anderson Elementary School. Further, the court concludes that Mansfield I.S.D. has failed to argue persuasively how Bailey's sexual orientation bears any rational relationship to her competency as an elementary school teacher, or her job performance as an elementary school teacher—a position she held for more than ten years during which time she was considered exemplary and even voted as "Teacher of the Year" twice. Until the time a parent complained about her sexual orientation, she taught at Charlotte Anderson Elementary School without incident. Based on the pleadings, the court reasonably draws the inference that Mansfield I.S.D.'s decision to place her on administrative leave for eight months and then not permit her to resume her job teaching art to elementary school students was based on her sexual orientation and a desire to appease complaining parents in the community operating on the basis of outdated stereotypes about homosexuals. Absent some rational relationship to a legitimate governmental interest or her job performance, a decision to place Bailey on administrative leave and then transfer her because of her sexual orientation runs afoul of the Fourteenth Amendment's equal protection guarantee. *See Romer*, 517 U.S. at 634-35 (concluding that an amendment to Colorado's state constitution—prohibiting any legislation or judicial action designed to protect the status of a person based on sexual orientation—violated the Fourteenth Amendment's equal protection guarantee because it was "a status-based enactment divorced from any factual context from which [the Court] could discern a relationship to legitimate state interests."); *Johnson*, 385 F.3d at 532

("[A] state violates the Equal Protection Clause if it disadvantages homosexuals for reasons lacking any rational relationship to legitimate governmental aims."); *see also Gill v. Devlin*, 867 F. Supp. 2d 849, 856 (N.D. Tex. 2012) (Means, J.) (holding that a lesbian teacher who alleged she was treated differently than similarly situated teachers based on sexual orientation stated a constitutional claim for a violation of her rights to equal protection of the laws under the Fourteenth Amendment, that "unconstitutionality of sexual-orientation discrimination lacking a rational relationship to a legitimate governmental interest was clearly established," and denying school officials' motion for judgment on the pleadings based on qualified immunity and public college's motion to dismiss).

While the Constitution cannot control prejudices in the community and "private biases may be outside the reach of the law," "the law cannot, directly or indirectly, give them effect." *Palmore v. Sidoti*, 466 U.S. 429, 433 (1984). As the Supreme Court stated, "[i]f the constitutional conception of equal protection of the laws means anything, it must at the very least mean that a bare . . . desire to harm a politically unpopular group cannot constitute a legitimate governmental interest." *Romer*, 517 U.S. at 634 (internal quotation marks and citation omitted). Further, public officials cannot avoid their constitutional duty by "bowing to the hypothetical effects of private . . . prejudice that they assume to be both widely and deeply held." *Palmore*, 466 U.S. at 433 (internal quotation marks and citation omitted). The private antipathy of some members of a community cannot validate state discrimination. *See City of Cleburne*, 473 U.S. at 448. Because a community's animus towards homosexuals can never serve as a legitimate basis for state action, actions based on that animus violate the Equal Protection Clause. *Romer*, 517 U.S. at 634; *City of Cleburne*, 473 U.S. at 448-50.

Mansfield I.S.D. has failed to advance any justification for placing Bailey on administrative leave for eight months and, ultimately, refusing to allow her to return to her job, other than the

"negative" reaction of some members of the community and an interest in allowing parents to decide what is appropriate gender discussion in the classroom. Bailey has alleged that this perceived negative reaction arose solely from her sexual orientation and stereotypes about homosexuals, and not from her abilities as an elementary school art teacher. The court, therefore, concludes that Bailey has alleged an underlying constitutional violation of her right to equal protection under the Fourteenth Amendment and rejects Mansfield I.S.D.'s arguments to the contrary. In doing so, the court, of course, is not concluding that there is no legitimate governmental purpose for Bailey's treatment by Defendants and is not concluding that there was actual discrimination based on any prohibited basis. At the motion-to-dismiss stage, the court simply concludes that Bailey's pleadings plausibly state a claim for the violation of a clearly established constitutional right.

c.      *Procedural Due Process*

Mansfield I.S.D. contends that Bailey has not alleged a viable claim for deprivation of her right to procedural due process. This position misconceives the nature of the issue. The Fourteenth Amendment forbids the State to deprive any person of life, liberty, or property without due process of law. Protected interests in property are normally "not created by the Constitution. Rather, they are created and their dimensions are defined" by an independent source such as state statutes or rules entitling the citizen to certain benefits. *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972). Accordingly, a state employee who under state law, or rules promulgated by state officials, has a legitimate claim of entitlement to continued employment may demand the procedural protections of due process. *Goss v. Lopez*, 419 U.S. 565, 572-73 (1975) (citations omitted).

Bailey alleges that, rather than going through normal disciplinary procedures or adhering to its general rule about not commenting on sensitive personnel matters, Mansfield I.S.D. developed

an exceptional process for gay and lesbian employees, derogating authority over their employment to any individual parent who complains or seeks to exercise a de facto veto power over their job and equal dignity. Bailey further alleges she should have had some fair opportunity to respond before she was put on an eight-month administrative leave and relegated to another school that would supposedly be more "appropriate." Am. Comp. ¶ 58. Viewing these allegations as true, the court concludes that Bailey has adequately alleged an underlying constitutional violation of her right to procedural due process under the Fourteenth Amendment and rejects Mansfield I.S.D.'s argument to the contrary.

  2. *Has Bailey Alleged a Policy Statement, Ordinance, Regulation, or Decision Officially Adopted or Promulgated by Mansfield I.S.D.'s Board of Trustees or a Custom or Practice?*

  Having concluded that Bailey has alleged an underlying constitutional violation under both the Equal Protection Clause and Due Process Clause of the Fourteenth Amendment, the court now addresses Mansfield I.S.D.'s argument that Bailey does not identify any "policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the District's Board of Trustees which has deprived her of a federally-protected right [or] a persistent, widespread practice that is so common and well-settled as to constitute a custom that fairly represents District policy." Defs.' Mot. to Dismiss 14.

  In opposition, Bailey argues that Mansfield I.S.D.'s liability is available under *Monell* because Mansfield I.S.D., with the approval of the Board of Trustees and/or Superintendent Vaszauskas, issued a press release that constitutes a policy—the Mansfield I.S.D. Press Release—that was the moving force behind her injuries. She pleads as follows:

36. The March 27 Statement evinces a policy (and/or practice or custom) only for gay/lesbian teachers whereby the School District derogates apparently exclusive decision-making power from the teacher (or School Board) to individual parents. The official Statement sets out that "parents have the right to control the conversation . . . [as it relates to] sexual orientation." "Parents hav[e] certain rights pertaining to the topics to which their children are exposed." Mansfield I.S.D. indicates no such policy for other teachers in opposite-sex marriages or relationships; no such policy exists.

\* \* \*

38. The March 27 Statement made clear that if Plaintiff had not mentioned her prospective same-sex marriage with her now-wife, then there would have been no complaints or concerns. The Statement treats Plaintiff's reference of her impe[n]ding marriage as the dispositive fact in the application of its policy or custom (e.g., "discussion[] . . . about sexual orientation"; "conversation with students"; "expose[]" the "topic[]" of a same-sex marriage). The Statement also refers to "protect[ing] the learning environment of our students" in effect from references to same-sex marriages.

39. The March 27 Statement suggests that Plaintiff's references to her future wife was not "age appropriate," that it constituted a discussion of "sex", and that it "exposed" "children" to "[non-]age appropriate instruction." No factual basis is provided. This reflects a policy (and/or practice or custom) of Mansfield I.S.D. depicting and treating same-sex marriage as an inherently inappropriate or explicit subject. Mansfield I.S.D. adopts no such policy (and/or customs or policies) for a heterosexual teacher who mentions her husband or his wife. The March 27 Statement implies a policy (and/or custom or practice) that gay/lesbian teachers may have untoward or inappropriate sexual attitudes or predilections towards children (a longstanding, widely known, and baseless stereotype). The Statement also seriously overstates the extent of Plaintiff's reference to her prospective marriage, calling it, for example, "ongoing discussions . . . about sexual orientation."

40. The March 27 Statements adopts an exceptional new policy (and/or custom or practice) of publicly commenting on personnel matters when they relate to "disrupt[ive]" gay/lesbian issues. The Statement openly acknowledges that "the District's general rule [is] not to comment on employee personnel matters," since it "protects both the employee and the District." Nonetheless, the Statement applied this new exception to Plaintiff and publicly discussed her personnel matter in detailed and often knowingly erroneous terms. The public issuance of the Statement predictably generated widespread media attention.

Am. Compl. ¶¶ 36, 38, 39, 40.

Based on these allegations, and its reading of the Mansfield I.S.D. Press Release that is part of the pleadings, *see supra* note 1, the court can reasonably infer that Mansfield I.S.D.'s Board of Trustees issued or approved a policy that intentionally discriminated against Bailey based on her sexual orientation.[8] Although Mansfield I.S.D. argues in its motion to dismiss that Bailey does not allege the Board of Trustees approved the Mansfield I.S.D. Press Release, she specifically alleges in her Amended Complaint that the "Statement was issued and/or approved by the Superintendent and/or **the Board**." Am. Compl. ¶ 33 (emphasis added).

The court also rejects Mansfield I.S.D.'s argument that Bailey's claims fail because she does not allege deliberate indifference on its part in passing or adopting the policy. As stated by the Supreme Court,

> **Claims *not* involving an allegation that the municipal action itself violated federal law, or directed or authorized the deprivation of federal rights**, present much more difficult problems of proof. That a plaintiff has suffered a deprivation of federal rights at the hands of a municipal employee will not alone permit an inference of municipal culpability and causation; the plaintiff will simply have shown that the employee acted culpably. We recognized these difficulties in *Canton v. Harris*, where we considered a claim that inadequate training of shift supervisors at a city jail led to a deprivation of a detainee's constitutional rights. We held that, quite apart from the state of mind required to establish the underlying constitutional violation—in that case, a violation of due process—**a plaintiff seeking to establish municipal liability on the theory that a facially lawful municipal action has led an employee to violate a plaintiff's rights must demonstrate that the municipal action was taken with "deliberate indifference" as to its known or obvious consequences**.

---

[8]Under Texas law, the final policymaking authority in an independent school district rests with the district's trustees. *Jett v. Dallas Indep. Sch. Dist.*, 7 F.3d 1241, 1245 (5th Cir. 1993). Texas Education Code § 11.051(a)(1) provides: "An independent school district is governed by a board of trustees who, as a body corporate, shall[] oversee the management of the district[.]" The Texas Education Code further provides, "[T]he trustees as a body corporate have the exclusive power and duty to govern and oversee the management of the public schools of the district," and that "[T]he trustees may adopt rules and bylaws necessary to carry out the[ir] powers and duties[.]" *Id.* § 11.151(b) and (d).

*Board of Cty. Comm'rs of Bryan Cty.*, 520 U.S. at 406-07 (emphasis added) (internal citation omitted); *see also Burge v. St. Tammy Parish*, 336 F.3d 363, 370 (5th Cir. 2003) (recognizing in context of section 1983 claims against municipality, that deliberate indifference showing is required when an alleged policy or custom is "facially innocuous"; by contrast, when an official policy or practice is allegedly facially unconstitutional, "it necessarily follows that a policymaker was not only aware of the specific policy, but also aware that a constitutional violation would most likely occur."); *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001) ("A municipality is culpable under § 1983 if: (1) the official policy is facially unconstitutional; or (2) if a facially innocuous policy was promulgated with deliberate indifference to the known or obvious consequences that constitutional violations would result.") (internal quotation marks and citation omitted).

In this case, Bailey bases section 1983 liability against Mansfield I.S.D. on an actual policy she alleges was issued or approved by the Board of Trustees, and that she alleges **in itself** violated her constitutionally protected rights, or directed or authorized the deprivation of her federally protected rights, not that an employee violated her rights under a facially valid policy. Accordingly, she need not allege that the Board of Trustees acted with deliberate indifference in order to state a claim against Mansfield I.S.D. under section 1983.

In light of allegations from which the court can reasonably infer that Bailey was subject to unequal treatment based on her sexual orientation and that she was denied procedural due process, and her allegations that Mansfield I.S.D.'s Board of Trustees issued or approved a policy that led to her constitutional deprivations, the court will deny Mansfield I.S.D.'s motion to dismiss her section 1983 claims against it that are premised on violations of her right to equal protection and due process under the Fourteenth Amendment.

### C.    Qualified Immunity - Individual Capacity Claims

#### 1.    *Qualified Immunity*

Government officials who perform discretionary functions are entitled to the defense of qualified immunity, which shields them from suit as well as liability for civil damages, if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  A defendant official must affirmatively plead the defense of qualified immunity. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980).  Defendant Superintendent Vaszauskas has asserted this defense in Defendants' Motion to Dismiss.

In deciding a dispositive motion that raises the defense of qualified immunity, the Supreme Court initially set forth a mandatory two-part inquiry for determining whether a government official was entitled to qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Under *Saucier*, a court must determine first whether the facts alleged or shown are sufficient to make out a violation of a constitutional or federal statutory right. If the record sets forth or establishes no violation, no further inquiry is necessary. On the other hand, if the plaintiff sufficiently pleads or establishes that a violation could be made out, the court must determine whether the right at issue was clearly established at the time of the government official's alleged misconduct. *Id.* The Court relaxed this mandatory sequence in *Pearson v. Callahan*, 555 U.S. 223 (2009), and stated, "[W]hile the sequence set forth [in *Saucier*] is often appropriate, it should no longer be regarded as mandatory," and judges "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 236. The second prong of the test "is better understood as two separate inquiries:

whether the allegedly violated constitutional right[] [was] clearly established at the time of the incident; and if so, whether the conduct of the defendant[] [official] was objectively unreasonable in light of then clearly established law." *Tarver v. City of Edna*, 410 F.3d 745, 750 (5th Cir. 2005) (internal quotation marks and citations omitted); *see also Evans v. Ball*, 168 F.3d 856, 860 (5th Cir. 1999); *Hare v. City of Corinth*, 135 F.3d 320, 326 (5th Cir. 1998); *Eugene v. Alief Indep. Sch. Dist.*, 65 F.3d 1299, 1305 (5th Cir. 1995).

Ordinarily, one who pleads an affirmative defense must establish his entitlement to such defense. In the context of qualified immunity, however, this burden varies from the norm. In this circuit, the rule is as follows:

> Where . . . [a] defendant pleads qualified immunity and shows he is a governmental official whose position involves the exercise of discretion, the plaintiff then has the burden to rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law. We do not require that an official demonstrate that he did not violate clearly established federal rights; our precedent places that burden upon plaintiffs.

*Pierce v. Smith*, 117 F.3d 866, 871-72 (5th Cir. 1997) (internal quotations and citations omitted); *see also Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010).

A right is "clearly established" only when its contours are sufficiently clear that a reasonable public official would have realized or understood that his conduct violated the right in issue, not merely that the conduct was otherwise improper. *See Anderson v. Creighton,* 483 U.S. 635, 640 (1987); *Foster v. City of Lake Jackson*, 28 F.3d 425, 429 (5th Cir. 1994). Thus, the right must not only be clearly established in an abstract sense but in a more particularized sense so that it is apparent to the official that his actions [what he is doing] are unlawful in light of pre-existing law.

*Anderson v. Creighton*, 483 U.S. at 640; *Stefanoff v. Hays County*, 154 F.3d 523, 525 (5th Cir. 1998); and *Pierce v. Smith*, 117 F.3d at 871.

In *Anderson*, 483 U.S. at 641, the Court refined the qualified immunity standard and held that the relevant question is whether a reasonable officer or public official *could have believed* that his conduct was lawful in light of clearly established law and the information possessed by him. If public officials or officers of "reasonable competence could disagree [on whether the conduct is legal], immunity should be recognized." *Malley v. Briggs*, 475 U.S. 335, 341 (1986); *Gibson v. Rich*, 44 F.3d 274, 277 (5th Cir. 1995) (*citing Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994)). Qualified immunity is designed to protect from civil liability "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. at 341. Conversely, an official's conduct is not protected by qualified immunity if, in light of clearly established pre-existing law, it was apparent the conduct, when undertaken, would be a violation of the right at issue. *Foster*, 28 F.3d at 429. To preclude qualified immunity, it is not necessary for a plaintiff to establish that "the [specific] action in question has previously been held unlawful." *Anderson*, 483 U.S. at 640. For an official, however, to surrender qualified immunity, "pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what the defendant is doing violates federal law *in the circumstances.*" *Pierce v. Smith*, 117 F.3d at 882 (emphasis in original and citation omitted); and *Stefanoff v. Hays County*, 154 F.3d at 525. Stated differently, while the law does not require a case directly on point, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. Al-Kidd*, 563 U.S. 731, 741 (2011) (citations omitted).

In analyzing qualified immunity claims, the Supreme Court has "repeatedly told courts … to not define clearly established law at a high level of generality." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (citation omitted). Pursuant to *Mullenix*, courts must consider "whether the violative nature of *particular* conduct is clearly established" and must undertake this inquiry "in light of the specific context of the case, not as a broad general proposition." *Id.* (citations and internal quotations marks omitted).

To defeat or overcome an official's qualified immunity defense, a plaintiff's complaint must allege specific facts that, if proved, would show that the official's conduct violated clearly established constitutional or statutory rights. In cases involving claims of qualified immunity, often it is appropriate to require a plaintiff to file a detailed reply to address the plea of qualified immunity. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995) (en banc). "[T]he reply must be tailored to the assertion of qualified immunity and fairly engage its allegations. A defendant has an incentive to plead his defense with some particularity because it has the practical effect of requiring particularity in the reply." *Id.* A plaintiff generally must be given the opportunity to reply with greater specificity in such cases before the court rules on a defendant's dispositive motion. *Todd v. Hawk*, 72 F.3d 443, 446 (5th Cir. 1996).

A reply, however, is only required when the claims in the complaint are not supported "with sufficient precision and factual specificity to raise a genuine issue as to the illegality of [a] defendant's conduct at the time of the alleged acts." *Schultea*, 47 F.3d at 1434. If "the pleadings on their face show an unreasonable violation of a clearly established constitutional right," the assertion of a qualified immunity defense is insufficient to sustain a Rule 12(b)(6) motion to dismiss.

*Shipp v. McMahon,* 234 F.3d 907, 912 (5th Cir. 2000), *overruled in part on other grounds by McClendon v. City of Columbia*, 305 F.3d 314 (5th Cir. 2002) (en banc).

### 2. Individual Capacity Claims

As previously stated, Superintendent Vaszauskas and Dr. Cantu move to dismiss all claims on the basis that the allegations in the Amended Complaint fail to overcome their assertion of qualified immunity. The court addresses each individual defendant's arguments in turn.

### a. Dr. Cantu

In addition to moving to dismiss based on qualified immunity, Dr. Cantu moves to dismiss because Bailey's allegations that she violated any constitutional rights are contradicted by Bailey's own pleadings alleging that "Defendant Vaszauskas . . . made all decisions regarding [her] administrative leave and subsequent actions." *See* Am. Compl. ¶¶ 12, 54. Further, according to the pleadings, Dr. Cantu stated that she did not "think [Bailey] did anything wrong" (*id.* ¶¶ 18, 21), encouraged and supported her efforts to alter policy (*id.* ¶ 20), and merely relayed parental complaints to her. Even accepting all well-pleaded facts in the Complaint as true, the court determines that Bailey has failed to allege that Dr. Cantu violated any of her constitutional rights, let alone took actions that were objectively unreasonable under clearly established law. Accordingly, the court will grant Dr. Cantu's motion to dismiss all claims against her.

### b. Superintendent Vaszauskas

With respect to Bailey's claim that he violated her constitutionally protected right to marry (Count I), Superintendent Vaszauskas makes the same arguments as Mansfield I.S.D. He contends that Bailey does not plead any facts to support that her marriage was halted, delayed, or that she was otherwise unable to marry as a result of the actions made the basis of her Amended Complaint. For

the reasons previously stated by the court in granting Mansfield I.S.D.'s motion to dismiss Bailey's claim that it violated her right to marry, the court will grant Superintendent Vaszauskas's motion to dismiss Bailey's claim that he violated her constitutionally protected right to marry.

As to her equal protection claim (Count II), Superintendent Vaszauskas argues that Bailey fails to allege adequately an equal protection violation under the Fourteenth Amendment sufficient to satisfy the standards of *Twombly* and *Iqbal*, *supra*. Further, he contends that, even were the court to conclude that Bailey alleged facts consistent with discrimination based on sexual orientation, the law in the Fifth Circuit is "clearly established" that sexual orientation is not a "suspect classification that requires heightened scrutiny." Defs.' Mot. to Dismiss 20.[9] The court has already considered these arguments in great detail with respect to Mansfield I.S.D.'s motion to dismiss and concluded that the Amended Complaint adequately alleges an underlying constitutional violation of the Fourteenth Amendment's Equal Protection Clause. For the same reasons the court denied Mansfield I.S.D's motion to dismiss Bailey's equal protection claim, it also denies Superintendent Vaszauskas's motion to dismiss her equal protection claim.

### D.     State Law Claims

Finally, with respect to Bailey's state law claims for alleged violations of the Equal Protection Clause of the Texas Constitution, Article I, § 3, and the Texas Equal Rights Amendment,

---

[9] Superintendent Vaszauskas contends he is entitled to qualified immunity because Bailey has failed to allege adequately an underlying constitutional violation, the first prong of the qualified immunity inquiry. Notably, he does not challenge the adequacy of her pleadings with respect to the second prong of the qualified immunity inquiry, namely, whether his alleged conduct was "objectively unreasonable"in light of clearly established law. In the reply brief, Defendants argue that "Plaintiff makes no effort to explain why the **District's** actions would be objectively unreasonable under the current state of the law." Defs.' Reply 9 (emphasis added). As previously explained, however, a municipality or school district does not have qualified immunity from suit; qualified immunity and the issue of whether a particular defendant sued under section 1983 acted in an objectively reasonable manner under clearly established law pertain only to public officials performing discretionary functions. *Pearson v. Callahan*, 555 U.S. 222, 231 (2009); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Accordingly, the issue of whether Bailey alleges adequately that Superintendent Vaszauskas acted in an objectively unreasonable fashion has not been joined at this juncture.

Article I, § 3a, Defendants argue jointly that, in the event the court dismisses Bailey's federal law claims, it should similarly dismiss her state law claims for failure to state a claim or, alternatively, decline to exercise supplemental jurisdiction over her state law claims pursuant to 28 U.S.C. § 1367(c). For the reasons previously stated with respect to Bailey's federal law claims, the court will deny Defendants' motion to dismiss her state law claims.[10] Further, as federal law claims remain, the court retains original federal question jurisdiction and need not reach Defendants' alternative argument that it should decline to exercise supplemental jurisdiction over the remaining state law claims under 28 U.S.C. § 1367(c).

### E.      Leave to Amend

At the end of her response to Defendants' motion to dismiss, Bailey requests leave of court to amend her pleadings. Defendants oppose this request, arguing that "Plaintiff has had an opportunity to amend her complaint following Defendants' original Motion to Dismiss, and she failed to plead any factual basis to support her claims in the amended complaint." Defs.' Reply 10. Defendants further contend that if "the protections afforded public officials are not to ring hollow, plaintiffs cannot be allowed to continue to amend or supplement their pleadings until they stumble upon a formula that carries them over the threshold." *Id.* (quoting *Jacquez v. Procunier*, 801 F.2d 789, 792 (5th Cir. 1986)).

Federal Rule of Civil Procedure 15(a)(2) provides that courts "should freely give leave" to a party seeking to amend her pleadings before trial "when justice so requires." This provision of Rule

---

[10] The requirements for equal protection claims under the United State Constitution and the Texas Constitution are substantially the same. *Southwestern Bell Tel. Co. v. Combs*, 270 S.W.3d 249, 272 (Tex. App.—Amarillo 2008, pet. denied). The federal analytical approach also applies to equal protection challenges under the Texas Constitution. *Lindquist v. City of Pasadena*, 669 F.3d 225, 233 (5th Cir. 2012).

15(a)(2), however, is not without limitation. The decision to allow amendment of a party's pleadings is within the sound discretion of the district court. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Norman v. Apache Corp.*, 19 F.3d 1017, 1021 (5th Cir. 1994) (citation omitted). In determining whether to allow an amendment of the pleadings, a court considers the following: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Foman*, 371 U.S. at 182; *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 566 (5th Cir. 2003) (citation omitted). Further, as recognized by the Fifth Circuit:

> In view of the consequences of dismissal on the complaint alone, and the pull to decide cases on the merits rather than on the sufficiency of pleadings, district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal.

*Great Plains Tr. Co.*, 313 F.3d at 329.

On May 8, 2018, Bailey filed her Original Complaint, which Defendants moved to dismiss for failure to state a claim. On August 28, 2018, the court granted Bailey's motion for leave to file an amended complaint to address various pleading deficiencies Defendants had raised in their motion to dismiss, and, therefore, denied as moot Defendants' motion to dismiss the Original Complaint. Order (Doc. 12). On September 18, 2018, Bailey filed her Amended Complaint. In its totality, Bailey's general request to amend the pleadings states: "While Bailey asserts she has stated claims for which relief can be granted, if the Court determines that Bailey has not sufficiently plead a claim for which relief [may be] granted against any or all Defendants, Bailey requests the opportunity to replead." Pl.'s Resp. 23.

Bailey's general request for leave to amend appears to be an afterthought, tacked on at the end of her response in opposition to Defendants' motion to dismiss the Amended Complaint. Bailey was certainly aware of Defendants' objections to her Amended Complaint, as they appeared on the face of Defendants' motion to dismiss. Despite her awareness, she has not demonstrated to the court how she would cure the pleading deficiencies with respect to her claims against Dr. Cantu or her right-to-marry claim and does not offer a proposed Second Amended Complaint or suggest in her response any additional facts not initially pleaded that could, if required, cure the pleading defects raised by Defendants. Rather, in her response, she declares the sufficiency of her pleadings and does not offer a proposed amended complaint in response to Defendants' motion to dismiss. Under these circumstances, the court will **deny** Bailey's request for leave to amend. *See Goldstein v. MCI WorldCom*, 340 F.3d 238, 255 (5th Cir. 2003) (finding no abuse of discretion in the district court's denial of leave to amend when the plaintiffs, at the end of their response to defendants' motion to dismiss, "almost as an afterthought, . . . tacked on a general curative amendment request," and failed to demonstrate how they would replead or cure the pleading defects previously raised by defendants); *McKinney v. Irving Indep. Sch. Dist.*, 309 F.3d 308, 315 (5th Cir. 2002) (finding no abuse of discretion in the district court's denial of leave to amend when, among other things, plaintiffs failed to alert the court as to the substance of any proposed amendment); *see also Babb v. Dorman,* 33 F.3d 472, 479 (5th Cir. 1994) (finding no abuse of discretion in the district court's denial of leave to amend when a plaintiff declared the sufficiency of his pleadings in response to the defendant's motion to dismiss and did not offer a sufficient amended complaint as part of response); *Spiller v. City of Texas City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997) (finding no abuse of discretion in the district court's denial of leave to amend when a plaintiff responded to the defendants' motion

to dismiss by "asserting that 'her pleadings in their present posture' sufficiently alleged liability," and she failed to furnish the district court with a proposed amendment during the two months following the filing of the motion to dismiss and the order granting that motion).

In addition, the court concludes that the pleading defects identified by the court—and resulting in dismissal of her right-to-marry claim and her claims against Dr. Cantu—are incurable. With respect to her section 1983 claim based on an alleged violation of her right to marry, Bailey pleaded that on March 16, 2018, more than ten days prior to the Mansfield I.S.D. Press Release, she married Ms. Julie Vazquez. *See* Am. Compl. ¶ 32. On the face of these pleadings, the court concluded that Bailey failed to plead any facts to support that her marriage was halted, delayed, or that she was otherwise unable to marry as a result of the actions made the basis of the Amended Complaint, and granted Defendants' motion to dismiss this claim. This pleading defect is incurable, as there are no allegations that could be asserted in an amended pleading to alter Bailey's allegation, which the court must accept as true, that she married Ms. Julie Vazquez.

Similarly, with regard to Bailey's claims against Dr. Cantu, the court granted Defendants' motion to dismiss based on Bailey's allegations that Dr. Cantu did nothing other than relay parental complaints to her, support her desire to change district policy, and that Superintendent Vaszauskas, and not Dr. Cantu, "made all decisions regarding [her] administrative leave and subsequent actions." *See id.* ¶¶ 12, 54. There is no factual scenario, other than by completely changing her allegations against Superintendent Vaszuaskas, under which Bailey can assert a claim against Dr. Cantu. These pleading defects are, therefore, incurable. *See, e.g., Cooper v. Harvey*, 108 F. Supp. 3d 463, 474 (N.D. Tex. 2015) (Boyle, J.) (declining to allow a plaintiff leave to amend his copyright infringement claim because defects in pleading were incurable when he failed to allege, or provide authority for

how he would allege, that the acts of a defendant qualified as copyright infringement); *Klein v. O'Neal, Inc.*, 2009 WL 3573849, at *9 (N.D. Tex. Oct. 30, 2009) (Fitzwater, C.J.) (A pleading defect is incurable when there is no factual scenario under which a claim may be asserted.). The Fifth Circuit has also held that, in seeking leave to amend in response to a motion to dismiss, a plaintiff's failure to specify what an amended complaint would say or "articulate how amendment would be helpful suggests the [pleading] defects are incurable." *Young v. United States Postal Serv. ex rel. Donahoe*, 620 F. App'x 241, 245 (5th Cir. 2015).

Further, any amendment to change these allegation would alter the nature of the trial, as Bailey would have to present an entirely new factual basis for her claims against Dr. Cantu. *See Little v. Liquid Air Corp.*, 952 F.2d 841, 846 (5th Cir. 1992) (finding no abuse of discretion in the district court's denial of leave to amend when the proposed amendment would have "radically altered the nature of a trial on the merits," and "would have established an entirely new factual basis for plaintiffs' claims").

Finally, Defendants have already been required to file two motions to dismiss. Allowing another amended pleading would result in undue prejudice to Dr. Cantu, who would be confronted with the need to file another motion to dismiss, further delaying resolution of certain issues in this case, and defeating the purpose behind qualified immunity. *See Jacquez*, 801 F.2d at 792 ("[I]f the protections afforded public officials are not to ring hollow, plaintiffs cannot be allowed to continue to amend or supplement their pleadings until they stumble upon a formula that carries them over the threshold.").

**IV.     Conclusion**

For the foregoing reasons, the court the **grants in part** and **denies in part** Defendants' Rule 12(b)(6) Motion to Dismiss (Doc. 14). The court **grants** the motion with respect to Bailey's section 1983 claims against Defendants Mansfield I.S.D. and Superintendent Vaszauskas based on the alleged violation of her right to marry; **grants** the motion with respect to all claims against Dr. Cantu; and **denies** the motion in all other part. Bailey's section 1983 claims based on a violation of her right to marry are hereby **dismissed with prejudice**. Bailey's section 1983 claims and state law claims against Dr. Cantu are hereby **dismissed with prejudice**.

**It is so ordered** this 21st day of November, 2019.

Sam A. Lindsay
United States District Judge